WEST *v*. WEST.

[95 South. 739. No. 23092.]

1. WILLS. *Husband administering estate as executor of wife estopped to assert title to land belonging to him devised thereby.*

Where a testatrix in her will devises and bequeaths real and personal property belonging to her husband, and also devises real property belonging to her husband to a third party, and the husband is appointed executor of the will, and is also a subscribing witness to it, and the husband proves the will as subscribing witness, takes out letters testamentary, qualifies as executor, and administers the estate, he thereby elects to take the property devised him under the will, and must see that the other devisees get the property devised them. By these acts he is estopped to assert title to the land belonging to him devised by the will.

2. WILLS. *Husband must renounce wife's will and refuse qualification as executor if he would keep own property devised thereunder.*

Had he desired to keep his own property devised by this will, it was his duty to have renounced the will, and he should not have qualified as executor thereunder.

3. WILLS. *Husband qualifying as executor under wife's will and taking thereunder estopped to claim own land devised, though devised to subscribing witness necessary to prove will void.*

Where the husband qualified as executor under this will, and administered the estate, he is estopped to claim title to this land despite the fact that section 2001, Code of 1906 (section 1666, Hemingway's Code), provides that a devise to a subscribing witness whose testimony is necessary to prove a will be void. In this case this section was not invoked, and the husband took the bequests and devises under the will.

4. WILLS. *Party taking benefits under a will precluded from attacking validity thereof.*

Where a party takes the benefits or provisions in his favor under a will, he is thereby precluded from at the same time attacking the validity of the bequests and devises to him.

APPEAL from chancery court of Bolivar county.

HON. G. E. WILLIAMS, Chancellor.

Suit by Robert H. West against Lula E. West. From a decree for defendant plaintiff appeals. Reversed and remanded.

*Shands, Elmore & Causey,* for appellant.

We say that the doctrine of election applies with full force, to the act of William when he presented the will for probate and qualified as executor of the estate. The letters testamentary issued by William, and the orders of the court directing that such letters issue to him show that he had theretofore presented the will for probate, and that such instrument was the true last will and testament of Angeline. The letters show that William had theretofore complied with the statutes of Mississippi in making probate of the will. So then, William followed the terms of the will, and complied with the statutes which require that he shall take before the letters are issued to him, on oath, that he "will well and truly execute the same (the will) according to its tenor, and discharge the duties required by law." Letters testamentary could not have been issued to him by the court until the statutory oath had been taken by him.

We thus see that we have an executor who has qualified as the law directs, and as the will provides, and has had the letters issued to him, who thereafter disregards the trust imposed in him, and does not execute the will according to its tenor, but disregards the wishes of his testator, and converts to his own use and benefit, not only the property devised to him in the will but the property therein devised to other persons.

The question which arises is this: Will the court permit an executor, whose duty it is to execute the will according to its tenor and who obtains possession of the property, by an order of the court, to take the property which he holds in trust and as an officer of the court, and convert the property to his own use? An executor is never forced by law to assume the duties of this office; he may refuse to qualify, or he may renounce his right to hold such office, and the statutes then authorize and direct the court to appoint such other persons who may qualify, so that the trust will not fail. The executor is an officer of the court and is responsible to the court for all acts performed by him. We therefore say, when a person qualifies as executor he then *ipso facto* elects to take under the will, and not against it, and he must execute the will according to its tenor. *Allen* v. *Allen,* 28 S. E. 513; *Mendenhall* v. *Mendenhall,* 53 N. C. 287; *Treadway* v. *Payne et al.,* 37 S. E. 460; *Whetsell* v. *London,* 57 N. E. 942.

The doctrine of election applies to still another phase of this case. We will say for the sake of the argument, that Angeline did not own the forty acres in question; that she had not the right to devise the interest therein to Robert, and that upon the death of Angeline the forty acres reverted to William. But we say that when Angeline, by her will, devised the forty acres belonging to William to Robert, and at the same time bestows by the will a benefit or a portion of her own property upon William, when William accepts under the will such portion of the property or such benefit which Angeline had a right and was able to give to him, William, thereby elects to take under the

will and he cannot defeat the devise of his own property to Robert. Pomeroy (4 Ed.), Par. 464; *Barrier* v. *Kelly,* 82 Miss. 233, 33 So. 974; *Sorenson* v. *Carey et al.,* 104 N. W. 958.

Without quoting further from the authorities, the proposition being so well settled, we call the court's attention to the following cases, where the above proposition is sustained: *De Vitto* v. *Harvey,* 104 N. E. 168; *Wolly* v. *Schroder,* 4 N. E. 658; *Gorman* v. *Dodge,* 14 N. E. 44; *Stunz* v. *Stunc,* 23 N. E. 407; *Brown* v. *Brown,* 44 N. W. 250, *supra; More* v. *Baker,* 30 N. E. 629; *Allen* v. *Bonner,* 52 N. W. 426; *Ditch* v. *Sennett,* 7 N. E. 636; *Washburn* v. *Van Steenwyk,* 20 N. W. 324; *Borden* v. *Ward,* 9 S. E. 300; *Rawley* v. *Sauns,* 40 N. E. 674; *Goodrum* v. *Goodrum,* 20 S. W. 353; *Chancey* v. *Gregg,* 32 S. W. 520 *Reville* v. *Duback,* 57 Pac. 522; *Hill* v. *Hill,* 41 Atl. 943; *Hartwig* v. *Schiefer,* 46 N. E. 75; *Appeal of School,* 17 Atl. 206.

The appellee urged in the lower court that the entire will including the devise made to William by Angie was void, by reason of section 2001 of the Mississippi Code of 1906, and that William took all of the property as mentioned in the will as an heir at law of Angie as though no will had been executed by her. It was admitted that William witnessed the will and it was proven that he received property under the will as a devisee. He is named executor therein without bond. He invoked the jurisdicton of the court, for the purpose of having the will probated. The will was probated as requested by William, and as required by the statutes, and he qualified as executor of the estate. He said in his petition under oath when he presented the will for probate, and when he asked that letters testamentary be issued to him, that Angie owned forty acres of land, which is identified by the witness at the trial, and he said that she owned at her death, real and personal property estimated to be worth six thousand dollars. This property was delivered to him as executor of the estate, and he entered upon the discharge of the duties required of him by law.

For the purpose of ready reference, we quote section 2001 of the Code above referred to: "2001 (1826). Devise to witness void. If any person be a subscribing witness to a will wherein any devise or bequest is made to him, etc." ·

The evident purpose of the above statute is to preclude a witness to a will from taking the specific devises or bequests, but not to avoid the entire will. Such person cannot take the specific devise yet he is a competent witness to establish the will in so far as it concerns the bequests and devises to other persons and he may be compelled to testify to establish the will as to .such bequests made to other persons. The latter part of the statute, gives the witness to the will, if he be entitled to share in the estate as an heir, such part of the estate as does not exceed in value the devise or bequest to him. So then the practical application of the above statute, does not avoid the entire above instrument as a will. The portion of the estate which William would have received had Angie died intestate, would have been the whole estate, but the fact that he witnessed the will does not cause her to die intestate, nor does the fact that he·witnessed the will give him the right to disregard the will and take the whole estate, but only causes the will to be void, in so far as the devise of the specific property to him is concerned. The proving the will by William does not cause him to be entitled to receive the entire estate, but only that portion of the whole estate which. does not exceed the value of the estate devised to him. Thus William is entitled to receive from the estate as his portion of the whole, the value of the life estate in the real and personal property plus the value of the crops grown during 1918. *Branson* v. *Watkins,* 23 S'. E. 204. See on this subject 1 Pom. Eq. Jur. pars. 483, 484, and notes; 2 Jarm. Wills (Rand and T. Ed.), 1 et. seq.; Hern, Estop., par. 892; *Board* v. *Board,* L. R. Q. B. 48; *Dewar* v. *Maitland,* L. R. 2 Ed. 834; *Suttons Appeal,* 112 Pa. St. 598, 4 Atl. 6; *Smith* v. *Guild,* 23 Me. 443; *Morrison* v. *Bowman,* 29 Cal. 337; *Smith* v. *Smith,* 14 Gray, 532; *Hatcher* v. *Cade,* 55 Ga. 359; *Parker*

v. *Crittenden,* 37 Conn. 148; *Utermehle* v. *Norment,* 49 Lawyer's Edition, page 655; *Hyde* v. *Baldwin,* 17 Pick. 303, 308; *Fry* v. *Morrisson,* 159 Ill. 244, 42 N. E. 774; *Madison* v. *Lorman,* 170 Ill. 65, 82, 62 Am. St. Rep. 356, 48 N. E. 556; *Fisher* v. *Boyce,* 81 Md. 46, 53, 31 Atl. 707; *Waters Appeal,* 35 Pa. 523; *Thrower* v. *Wood,* 53 Ga. 458.

We say the doctrine of election applies and William having elected to proceed under the will he and his privies cannot rescind such election.

*Sillers, Clark & Sillers,* for appellee.

Counsel contends that the doctrine of equitable election applies in this case and that William West and the parties claiming under him will not be permitted to defeat the provisions of the will of Angeline and take the south forty acres of land, but under the terms of the will of Angeline West the appellants in this case are vested with a title to the south forty acres of this land. The will of Angeline E. West and the proof of same is shown on pages 17 and 18 of the record. The subscribing witnesses to the will by whom proof was made of the will when offered for probate, was William West.

In the first place, no devise was made under this will to William West. Section 1666 of Hemingway's Code provides: "If any person be a subscribing witness to a will wherein any devise or bequest is made to him and the will cannot otherwise be proven, such devise or bequest shall be void, and the witness shall be competent as to the residue of the will as if a devise or bequest had not been made to him, and he may be compelled to testify. But, if such witness would have been entitled to any share of the testator's estate in case the will were not established, then so much of such share shall be saved to the witness as shall not exceed the value of the devise or bequest made to him under the will."

Angie West had no children, and William West was her sole and only heir at law, and without any will at all would

have inherited from her the absolute title to all of this property. Granting for the sake of the argument that Angeline E. West, by the deed of April, 1908, owned no title of any kind at the time of her death to any of the lands involved in this suit, she only owned and William West could only have and inherit from her an estate in the said lands extending from the time of her death to the time of his death. Under the terms of this will this land went to William West, and therefore, if he took under the section of the Code above quoted, he took nothing more than the share which he could have received had there been no will, but we must earnestly contend to the court that Angeline West owned no interest in the lands which she could will; that William West, being a witness to the will could not have taken same under the will. William West took nothing under the will, or otherwise, which could cause the doctrine of equitable election, which is discussed at such length by counsel in his brief, to apply in this case.

In the case of *Barrier* v. *Kelly,* reported in 82 Miss. 233, we find the following: "The doctrine of election rests upon the principle that he who seeks equity must do it and means, as the term is ordinarily used, that, where two inconsistent or alternative rights or claims are presented to the choice of a party by a person who manifests a clear intention that he should not enjoy both, then he must accept or reject one or the other, and so, in other words, that one cannot take a benefit under an instrument and then repudiate it."

This is a clear, concise statement of the rule, and a careful reading of it, as well as a clear understanding of the fact in this case, will convince the court that the doctrine of equitable election has no more bearing upon the respective rights of appellant and appellee in this case than the Monroe Doctrine has upon the conduct of the internal affairs of China.

Further, Angeline West manifested no clear intention that William West should not have the estate that he took. After having taken no benefit under the will of

Angeline West, the doctrine of equitable election has nothing whatever to do with this case.  In the case relied on by counsel, of *Barrier* v. *Kelly,* which case is set up at great length ∗in counsel's brief, Barrier in that case took a considerable amount of property under the terms of a deed to which he had no semblance of right other than that deed.  Having taken this property which he could not have received otherwise, he then attempted to repudiate the deed and the court very properly held that he could not do so, and the doctrine of election applied in that case.

We insist to the court that William West's actions in regard to the will, and William West's ideas as to whether there was any validity in the bequests in the will of Angeline West, are matters in which the court is not interested, and which we will not use the time of the court in discussing.

We again submit to the court that the deed from William West to Angeline West is perfectly clear in its terms, in expressing the intention of William West, contains no repugnant statements or recitals, and that the doctrine of election insisted upon by counsel has no application in this case at all, and that the final decree entered in this cause should be affirmed.

SYKES, P. J., delivered the opinion of the court.

The appellant, as complainant in the chancery court, in his bill asks for a sale or division in kind of forty acres of land of which he claims to own in fee simple an undivided one-half interest.  He alleges that he was devised this interest in the land under the will of Angeline E. West.  The land was originally owned by William West, deceased, and Angeline West was the first wife of William, and the appellee, Lula E. West, is his second wife.  Lula claims the land in controversy under a deed, and also under the will of William West.  At the time of the marriage of William and Angeline she owned certain personal property, and

before the execution of her will she had also acquired some real property.

In 1908 William West executed and delivered to his wife, Angeline, a deed to certain real and personal property. The material parts of the deed which concern the land in question are as follows:

"And for the further consideration I do hereby convey and warrant to my said wife, Angeline E. West, for and during the remaining period of my natural life the following described land situated in Bolivar county, Mississippi, to wit:

"North half of the northwest quarter (N. 1-2 N. W. 1-4), section 9, township 23, range 5 west, containing eighty acres more or less together with all the rents, issues and profits arising therefrom.

"At my death the title to the south forty acres of the above-described tract of land, viz, the south half of the north half of the northwest quarter of section 9, township 23, range 5 west, forty acres more or less shall vest in fee-simple title in my said wife, Angeline E. West. free from all the rights, title, claims, or demands of any of my other heirs, or of any person or persons whomsoever. . . .

"In the event of the death of my said wife before my death any and all interest and title in and to the said lands or any part thereof shall revert to me."

It is the contention of counsel for the appellant that by this deed Angeline became vested. with a fee-simple title to the forty acres of land in question. This deed is perfectly plain and unambiguous. It conveyed to Angeline this land during the life of William, and, in case of his death before Angeline, then she was to be vested with the fee-simple title therein. It was only, however, in case of his death before hers that this title was to vest in her. This is made certain by the last clause in the deed, wherein it is stated that, in the event of the death of Angeline before William, all interest and title in the lands revert to William. This latter clause, however, was unnecessary,

because the deed had not granted the remainder in case of the death of Angeline before William. From a consideration of the entire deed, however, it is perfectly plain that he meant to reserve the remainder to himself in case Angeline predeceased him.

Complying with this deed Angeline took possession of the property granted thereunder to her. Several years thereafter Angeline published her will, which is as follows:

"I bequeath all of my property real and personal to my beloved husband William West for the balance of his natural life except one lot or plot of land in Muskogee, Oklahoma; the said lot after my death I bequeath to my adopted son, Robert Horred West. The crop of 1918 known as Angie West's after rent has been paid, the expense of making crops and the Dr.s' bill of the said Angie West the balance of the net proceeds of the crop be placed to the account of William West, my husband.

"After the death of William West, my husband, the forty acres deeded to me by the said William West which is a part of the homestead is to be divided equally between Robert Horred West and Henry Ridder West, my adopted sons, Henry West to hold claim on his part as long as he lives. After the death of Henry R. West the said plot of land twenty acres will go into the possession of my nieces, Martha Nelson and Patsy Nelson Smith.

"The two lots bought of Charles Banks located near Mound Bayou, a part of William Lewis' tract, after the death of William West, my husband, one of the said lots will become the property of Henry Ridder West as long as he lives, after the death of Henry Ridder West, my adopted son, the said lots will go to my nieces, Martha Nelson and Patsy Nelson Smith.

"The other lot bought of Charles Banks near Mound Bayou, a part of the William Lewis tract, after the death of William West, my husband, will become the property of K. R. Brown, his heirs to have and to hold deed and title to the said lot, I hereby appoint William West, my husband, administrator without bond."

"I declare this to be my last will and testament this 16th day of September, 1918."

This will was witnessed by her husband, William, and another party named Brown. The following year Angeline died. The will was duly probated by William, was proved by him as a subscribing witness, and letters testamentary thereunder were issued to him. As such executor he took possession of this estate. Under this will William was devised and bequeathed for life all of the property of Angeline except a lot in Oklahoma. In this will Angeline, evidently believing herself the owner of the forty acres of land in controversy, devised one half in fee simple to this appellant, a life estate in the other half to Henry R. West, and remainder to Martha and Patsy Nelson Smith. While Angeline only had a life estate (during William's life) in this land, she evidently thought she owned it in fee simple. She was really devising in this will lands which at her death belonged to William. In other words, she had no title to devise in these lands.

William received under the will a life estate in all Angeline's real and personal property except the one lot in Oklahoma. He did not renounce the will and elect to take under our statutes. On the contrary he probated the will, proved it as a subscribing witness, and attempted to execute its provisions as such executor. By probating the will, qualifying as executor thereunder, and attempting to act as such, he elected to take under the will, and by doing so he acquiesced in the devise thereunder of the land owned by him to these parties. It was his duty as executor to execute the will in all of its provisions, and by qualifying as such he made his election to take under the will, and therefore he must not only take what is devised him under the will, but see that the other devisees get the property devised to them by the testatrix. *Allen* v. *Allen,* 121 N. C. 328, 28 S. E. 513; *Treadway* v. *Payne,* 127 N. C. 436, 37 S. E. 460; *Whetsell* v. *Louden,* 25 Ind. App. 257, 57 N. E. 952. This rule is aptly stated in Pomeroy's Equity Jurisprudence (4th Ed.) vol. 1, section 464, p. 883:

"When a testator devises an estate belonging to A. to some third person, and at the same time bestows a portion of his own property upon A., he undoubtedly must rely upon the benefits thus conferred upon A. as an inducement to a ratification by A. of the whole disposition. To give A. the property which the testator was able to dispose of, and at the same time to allow him to claim his own estate, which had been devised to the third person, by his own paramount title, would be to frustrate the evident intention of the testator. In the second case, where the testator, or other donor, erroneously supposes that the property which he undertakes to give away is in fact his own, the doctrine of election applies with the same force and to the same extent as in the former."

This quotation from Pomeroy is quoted with approval by this court in the case of *Barrier* v. *Kelly,* 82 Miss. 233, 33 So. 974, 62 L. R. A. 421.

It is contended by the appellee that there was no election to take under the will by William because under section 2001, Code of 1906 (Hemingway's Code, section 1666), since the will was proved by William as a subscribing witness, the devise to him thereunder is void. This section is as follows:

"If any person be a subscribing witness to a will wherein any devise or bequest is made to him, and the will cannot otherwise be proven, such devise or bequest shall be void, and the witness shall be competent as to the residue of the will as if a devise or bequest had not been made to him, and he may be compelled to testify. But if such witness would have been entitled to any share of the testator's estate in case the will were not established, then so much of such share shall be saved to the witness as shall not exceed the value of the devise or bequest made to him in the will."

It will be noted that the only devise or bequest made void under this section is the one to the subscribing witness whose testimony is necessary to probate the will. All of the rest of the will is valid and operative. It will further

be noted that, had this section been invoked by any one in the administration of Angeline's estate, William would have taken in lieu of his share under the will a share of the estate not exceeding in value the devise or bequest to him.

In this event he would have taken this share under this section, but the devise of this land would have been valid. It was his duty in the first instance to elect whether to take under the will or renounce the will, or, should the courts so adjudge, take under section 2001, Code of 1906 (Hemingway's Code, section 1666). It is perfectly evident, however, under this record that he elected to take the estate devised and bequeathed him under the will, and as a matter of fact he did take this estate, and there was no contest of any kind, and that he did not take a share under this section of the Code.

William, having probated the will, qualified as executor thereunder, and administered the estate in accordance with its provisions, would be estopped if living to assert the invalidity of the devise to him. He offered the will for probate as a valid will in every particular. He qualified as executor thereunder, and administered the estate in accordance with its provisions. Having done this on the one hand, he could not on the other hand claim it to be invalid in any particular. *Branson* v. *Watkins,* 96 Ga. 54, 23 S. E. 204.

In *Utermehle* v. *Norment,* 197 U. S. 40, 25 Sup. Ct. 291, 49 L. Ed. 655, 3 Ann. Cas. 520, it is stated: "As to what is the law relating to a party taking the benefit of a provision in his favor under a will, there is really no foundation to dispute the proposition that he thereby is precluded from, at the same time, attacking the validity of the very instrument under which he received the benefit."

In that case there are many authorities cited and discussed.

In this case the surviving wife of William, Lula E. West, has no higher rights than would William if living. And since William elected to take under the will, he is estopped

from claiming title to this forty acres. So likewise is this appellee. The chancellor held otherwise.

The decree of the lower court will be reversed; title in fee simple to a one-half undivided interest in this forty acres of land is vested in this appellant under this will. The bill seeks either a sale of the lands or that they be partited in kind. For a determination of this latter question, the cause is remanded.

*Reversed and remanded.*